IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE: | * |
| | * |
| LINWOOD JOHNSON | *   Case No. 13-30545-WIL |
| | *   Chapter 7 |
| Debtor | * |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

MOTION TO (1) ENFORCE ORDER COMPELLING
DEBTOR'S COOPERATION, (2) ENFORCE ORDER REQUIRING
PRODUCTION OF DOCUMENTS AND AUTHORIZING RULE 2004
EXAMINATION OF THE DEBTOR; AND (3) HOLD DEBTOR IN CONTEMPT

MICHAEL G. WOLFF (the "Trustee"), the Chapter 7 Trustee for the Bankruptcy Estate of Linwood Johnson (the "Debtor"), by his attorneys, JEFFREY M. ORENSTEIN and GOREN, WOLFF & ORENSTEIN, LLC, moves, pursuant to 11 U.S.C. § 105 and Bankruptcy Rules 2005, 9014 and 9020, for an Order (1) enforcing this Court's Order Compelling Debtor's Cooperation (the "Order to Compel"); (2) enforcing this Court's Order Requiring Production of Documents and Authorizing Rule 2004 Examination of the Debtor (the "2004 Order"); and (3) holding the Debtor in Contempt.  In support of his Motion, the Trustee states as follows:

1.      On December 6, 2013, (the "Petition Date"), the Debtor filed a Voluntary Petition for Relief under Chapter 7 of the United States Bankruptcy Code.

2.      Thereafter, the Trustee was appointed to serve as the Chapter 7 Trustee for the Debtor's estate, and the Trustee continues to serve in that capacity.

3.      On December 31, 2013, the Debtor filed his Statement of Current Monthly Income and Means Test Calculation in which he reported that his monthly gross wages, salary, tips, bonuses, overtime, and commissions for the relevant period were $4,500.00 ($54,000.00 on

1

an annualized basis) and that he received no gross income from the operation of any business during the same period.

4. The same day, the Debtor filed his Statement of Financial Affairs ("SOFA") which, for all intents and purposes, provided no information. By way of example, the Debtor's SOFA reported that the Debtor had no gross income in the two years immediately preceding the Petition Date which, as evidenced by his Statement of Current Monthly Income and Means Test Calculation, was not an accurate statement .

5. That same day, the Debtor also filed his Schedules which reflected that the total value of his personal property was $11,293.00.

6. The Debtor's Schedule I reflected that he was a musician who had been employed by "Uppercut Entertainment" for a period of ten (10) years with a current average monthly gross wage of $4,500.00. The Schedule I also reflected that the address for Uppercut Entertainment was the Debtor's residence.

7. On February 18, 2014, the Trustee conducted, but did not conclude, the Debtor's Section 341 Meeting.

8. At the Section 341 Meeting, the Debtor provided the Trustee with pay advices from an entity identified as Uppercut Entertainment, LLC ("Uppercut Nevada").

9. The pay advices that were provided to the Trustee reflected that, for the period from May 26, 2013, through and including September 21, 2013, the Debtor received bi-weekly gross wages of $3,750.00 (approximately $97,500.00 on an annualized basis), and further reflected that, for the period from September 22, 2013 through and including December 21,

2013, the Debtor received bi-weekly gross wages of $3,250.00 (approximately $84,500.00 on an annualized basis).

10. According to the records of the Nevada Secretary of State, Uppercut Nevada is a revoked Limited Liability Company that was formed in the Sate of Nevada in June of 2011. The Debtor is the only individual that is identified in the State of Nevada's records as having any interest in Uppercut Nevada.

11. At the Section 341 Meeting, the Debtor also provided the Trustee with the Debtor's 2006 Form 1040 which reflected that the Debtor had no wages, but had received over $300,000.00 of net business income from a Schedule C business that was identified as Uppercut Entertainment.

12. According to the records of the Maryland State Department of Assessments and Taxation, Uppercut Entertainment, LLC ("Uppercut Maryland") is a forfeited Limited Liability Company that was formed in the State of Maryland in August of 2002. Uppercut Maryland's Articles of Organization were signed by the Debtor.

13. While the Debtor's SOFA contains little or no substantive information, Statement 18(b) of the Debtor's SOFA does list Uppercut Entertainment as a business that has been in existence from "2003-present." The address that is provided for Uppercut in the Debtor's SOFA is the Debtor's residence.

14. Notwithstanding these facts, at his Section 341 Meeting, the Debtor testified that he was last in business for himself in 2007, claiming he no longer had any ownership interest in the business he referred to as "Uppercut Entertainment."

15. The Debtor testified that he is employed by Uppercut Entertainment and that Uppercut Entertainment is engaged in the business of "entertainment/music" with "shows all over the world."

16. The Debtor testified that Uppercut Entertainment promoted shows, but that he "has certain artists that [he manages] individually."

17. The Debtor further testified that he receives a percentage of those artists' fees with the last such booking being a 3 night booking in Toronto in November of 2013 and with the Debtor having received approximately $5,000.00 as his compensation.

18. The Debtor's pay advices and testimony establish that his Schedules, SOFA and Statement of Current Monthly Income and Means Test Calculation (the "Required Documents") are not accurate.

19. At the Section 341 Meeting, the Debtor also testified that he has not filed tax returns since prior to 2010.

20. Without complete and accurate Required Documents, without up-to-date tax returns, without information regarding the Debtor's interest in the entities known as Uppercut, and without information regarding the Debtor's promotional and management activities and income, the Trustee cannot properly administer the Debtor's estate.

21. For that reason, on February 20, 2014, the Trustee filed a Motion to Compel Debtor's Cooperation by which he sought an Order compelling the Debtor to (a) file his state and federal tax returns for 2010, 2011 and 2012, (b) provide the Trustee with copies of all filed tax returns for 2010, 2011 and 2012, and (c) provide the Trustee with copies of all contracts by which the Debtor has received, or may in the future receive, compensation for his promotion,

management, or other involvement in any entertainment event to the extent that such contact was in effect during any portion of the period from January 1, 2013 through and including December 6, 2013.

22.     On February 24, 2014, the Trustee also filed a Motion for Rule 2004 Examination of the Debtor by which he sought the production of certain documents in the Debtor's possession, custody and/or control and by which he sought an opportunity to conduct the oral examination of the Debtor following the Trustee's receipt of the documents.

23.     On March 11, 2014, the Court entered its 2004 Order by which the Court Ordered the Debtor to appear for an examination under oath and also Ordered "that within twenty-one (21) days from the entry of this Order, the Debtor shall deliver to Michael G. Wolff" certain documents that were enumerated in the 2004 Order.

24.     Additionally, on March 14, 2014, the Court entered its Order to Compel in which the Court provided as follows:

> ORDERED, that no later than the date set forth in the margin above, the Debtor shall file Amended Schedules, an Amended Statement of Financial Affairs, and an Amended Statement of Current Monthly Income and Means Test Calculation that fully, completely, and accurately report the Debtor's assets, liabilities, financial condition and transactions for the period referenced in those documents; and it is further
>
> ORDERED, that no later than the date set forth in the margin above, the Debtor shall file all state and federal tax returns that, based upon applicable law, were required to have been filed for the periods through December 31, 2012; and it is further
>
> ORDERED, that no later than the date set forth in the margin above, the Debtor shall provide the Trustee with copies of all filed tax returns for the calendar years 2010, 2011 and 2012; and it is further

>ORDERED, that no later than the date set forth in the margin above, the Debtor shall provide the Trustee with copies of all contracts by which the Debtor has received, or may in the future receive, compensation for his promotion, management, or other involvement in any entertainment event to the extent that such contact was in effect during any portion of the period from January 1, 2013 through and including December 6, 2013.

25. The margin of the Order to Compel included the statement "DEBTOR SHALL COMPLY WITH THE TERMS OF THIS ORDER NO LATER THAN MARCH 24, 2014."

26. By letter dated March 18, 2014, the Trustee's undersigned counsel, provided copies of the 2004 Order and the Oder to Compel to the Debtor's counsel and reminded him of the Debtor's obligations under the Orders. A copy of the Letter is attached hereto as **Exhibit 1**.

27. With no amendments having been made and no documents having been produced, by letter dated March 26, 2014, the Trustee's undersigned counsel again wrote to the Debtor's counsel and stated:

>On March 18, 2014, I wrote to address a number of issues including, but not limited to the Court's Order Compelling Debtor's Cooperation which required that, on or before March 24, 2014, the Debtor would (1) file Amended Schedules and related documents, (2) file all tax returns through December 31, 2012, and (3) provide certain documents to the Trustee. Two days have passed since the Court imposed deadline and the Court's docket reflects that there have been no amendments filed. In addition, we have not received any of the required documents in our office. These facts lead me to believe that it is likely that the Debtor has also not filed the required tax returns although I certainly stand to be provide wrong if that is not the case.
>
>The Trustee has no authority to provide the Debtor with an extension of any deadline that the Court has established in an Order and the Court can certainly see for itself that the required amendments have not been filed. Nonetheless, in a good faith effort to allow the Debtor to avoid being held in contempt and to allow the Trustee to efficiently administer this bankruptcy estate, the Trustee will wait an additional seven (7) days before bringing these deficiencies to the attention of the Court. I hope and trust that the Debtor will take full advantage of this additional

time and will do everything that is required to comply with the Court's Order.

A copy of the letter is attached hereto as **Exhibit 2**.

28. On April 1, 2014, the Trustee's undersigned counsel again reached out to the Debtor's counsel sending an e-mail to advise that the Trustee would consider bringing the matter to the Court's attention if no action had been taken by April 3, 2014. A copy of the April 1, 2014, e-mail threads addressing this issue is attached hereto as **Exhibit 3**.

29. The same day, the Debtor's counsel responded stating:

> I m responding to your letter. I have tried to get the debtor to obtain the documents and comply with the order. He has not been very cooperative and there is not much more I can do. He says he is not able to obtain everything requested. Let's see what happens.

See **Exhibit 3**.

30. As of the filing of this Motion, the Trustee has not received any documents or any further communication from the Debtor and the amendments required by the Oder to Compel still have not been made.

31. Bankruptcy Rule 2005(a) provides:

> On motion of any party in interest supported by an affidavit alleging (1) that the examination of the debtor is necessary for the proper administration of the estate and that there is reasonable cause to believe that the debtor is about to leave or has left the debtor's residence or principal place of business to avoid examination, or (2) that the debtor has evaded service of a subpoena or of an order to attend for examination, or (3) that the debtor has willfully disobeyed a subpoena or order to attend for examination, duly served, the court may issue to the marshal, or some other officer authorized by law, an order directing the officer to bring the debtor before the court without unnecessary delay. If, after hearing, the court finds the allegations to be true, the court shall thereupon cause the debtor to be examined forthwith. If necessary, the court shall fix

conditions for further examination and for the debtor's obedience to all orders made in reference thereto.

32.Because the Debtor has not produced the documents required by the 2004 Order, the Trustee has elected not to pursue the oral examination at this time. For that reason, it is not immediately apparent that Rule 2005 technically applies to the circumstances as they presently exist.

33.The fact that Rule 2005 may not be applicable does not, however, mean that there is no available remedy for the Debtor's refusal to comply with the Court's Orders.

34.Federal Rule of Bankruptcy Procedure 9020, titled Contempt Proceedings, makes Federal Rule of Bankruptcy Procedure 9014 applicable to any motion for an order of contempt made by a party in interest.

35.The Trustee is a party in interest.

36.There are two types of contempt, civil and criminal. Civil contempt is remedial in nature and is intended to coerce the non-compliant party into doing what he is already obligated to do. In re Catron, 199 B.R. 11, 13 (Bankr.E.D.Va. 1996). "Civil contempt proceedings in a bankruptcy case arise in a civil proceeding and are designed to coerce compliance with an order in that proceeding or to compensate a party in that proceeding for the damage arising from violation of the order." See In re Akl, 2008 WL 5102277, Footnote 4.

37.Criminal contempt, on the other hand, is to punish willful disobedience of a court order, decree or command. The power of a federal court to hold an individual in contempt is found in Section 401 of Title 18, which reads:

> A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as-- (1) Misbehavior of any person in its presence or so near

thereto as to obstruct the administration of justice; (2) Misbehavior of any of its officers in their official transactions; and (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

Title 18 U.S.C. § 401.

38. "Federal courts are granted this authority in order to vindicate the power of the court if an order is not obeyed." In re Catron, 199 B.R. at 14, citing In re Palumbo Family Ltd. Partnership, 182 B.R. 447, 477 (Bankr.E.D.Va. 1996).

39. Criminal contempt under 18 U.S.C. § 401(3) is supported by two elements: (1) a clear and specific order of the court, and (2) a willful violation of that order. See In re Catron, 199 B.R. at 14, citing In re Holloway, 995 F.2d 1080, 1082 (D.C. Cir. 1993), cert. denied; United States v. KS & W Offshore Eng'g., Inc., 932 F.2d 906, 909 (11th Cir. 1991); In re Downing, 195 B.R. 870, 875 (Bankr.D.Md. 1996).

40. In order for the conduct to be punishable under 18 U.S.C. § 401(1), four elements must be established beyond a reasonable doubt:

  (1) Misbehavior of a person;
  (2) Which is in or near to the presence of the Court;
  (3) Which obstructs the administration of justice; and
  (4) Which is committed with the required criminal intent.

See U.S. v. Warlick, 742 F.2d 113, 115-16 (4th Cir. 1984).

41. The obstruction of the administration of justice requires some act that will interrupt the orderly process of the administration of justice or "thwart the judicial process." Id.

42. The Debtor's receipt of the 2004 Order and Order to Compel, his counsel's acknowledgment of the Debtor's lack of cooperation, and the Debtor's continued refusal to

comply or to even attempt to comply with the 2004 Order and the Order to Compel certainly meets this standard.

43. The necessary element of criminal intent has been defined as "a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful … [o]f course, an actual design to subvert the administration of justice is more grievous and perhaps more culpable state of mind, but proof of such an evil motive is unnecessary to establish the required intent." Id. at 117, citing U.S. v. Seale, 461 F.2d 345, 368-69 (7th Cir. 1972).

44. Under the facts presented, the Debtor is in contempt of the 2004 Order and the Order to Compel. The only questions is whether the contempt is a civil contempt or a criminal contempt.

45. Were the Debtor's actions believed to be a criminal contempt, the Trustee recognizes that this Court's power to address the contempt would be limited, see United States v. Guariglia, 962 F.2d 160, 163 (2"d Cir. 1992), and that, upon finding that Debtor had engaged in criminal contempt, the matter wold have to be must be referred to the United States Attorney, who would be empowered to bring the matter before the United States District Court. Id. See also 28 U.S.C. § 586.

46. Notwithstanding the Debtor's continuing and wilful violation of the 2004 Order and the Order to Compel, the Trustee recognizes that the Debtor has not yet made an appearance before the Court and, for that reason, believes that the relief which may be afforded is limited to the relief under the civil contempt standard.

47. Without the Debtor's compliance with the 2004 Order and the Order to Compel, the Trustee cannot complete the administration of the Debtor's estate and the Debtor's creditors will continued to be hindered and delayed from receiving distributions on account of their claims.

48. Despite his best efforts to coerce the Debtor's cooperation on his own, the Trustee is left with no choice but to file this motion and to ask the Court to require the Debtor to show cause why he should not be held in contempt and, thereafter, to conduct a hearing to make that determination.

49. In order to permit the Court to make such awards of attorneys' fees as the Court may deem appropriate under the circumstances, the Trustee shall, as further directed by the Court, be prepared to file additional documents setting out the fees and costs the Trustee has incurred in connection with (1) the Debtor's refusal to comply with the 2004 Order, (2) refusal to comply with the Order to Compel, (3) any further proceedings required as a result of this motion and/or the Debtor's response thereto.

WHEREFORE, the Trustee requests that the Court enter an Order:

A. Granting the Trustee's Motion;

B. Requiring the Debtor to show cause, in writing, why he has not complied with this Court's 2004 Order and Order to Compel and why he should not be held in contempt of Court;

C. Scheduling a hearing to consider the Debtor's response;

D. Again requiring the Debtor to provide the documents and to take the actions directed by the 2004 Order and the Order to Compel; and

  E. Granting such other and further relief as the Court deems appropriate under the circumstances presented in this case.

          Respectfully submitted,

          \s\ Jeffrey M. Orenstein
          JEFFREY M. ORENSTEIN (#07512)
          Goren, Wolff & Orenstein, LLC
          Shady Grove Plaza
          15245 Shady Grove Road
          Suite 465
          Rockville, Maryland  20850
          (301) 984-6266
          jorenstein@gwolaw.com

          Counsel for Michael G. Wolff, Trustee

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on this   14th   day of April, 2014, a copy of the foregoing was sent via first class mail, postage prepaid, or if so indicated on the ECF receipt, via electronic mail to:  Wayne G. Gracey, Esq., Wayne G. Gracey, Law Associates, LLC, 3509 Sweet Air Road, Phoenix, Maryland 21131; Linwood Johnson, 22237 Trentworth Way, Clarksburg, Maryland 20871; and Office of the U.S. Trustee, 6305 Ivy Lane, #600, Greenbelt, MD 20770

          \s\ Jeffrey M. Orenstein
          Jeffrey M. Orenstein